UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Gary Vincent,
   Petitioner,

   v.             Civil Action No. 2:09-CV-8

Andrew Pallito, Commissioner,
Vermont Department of Corrections,
   Respondent.[1]

# REPORT AND RECOMMENDATION
(Doc. 1 and 3)

Petitioner Gary Vincent, proceeding *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Vincent was convicted in state court of lewd and lascivious conduct with a child. His conviction was affirmed on direct appeal, and he now comes to this Court raising the following two arguments: (1) that the trial court committed error when it allowed the investigating officer to testify about his ability to judge credibility; and (2) that the trial court failed to address the admission of "other bad acts" in its instruction to the jury. For the reasons set forth below, I find no basis for granting the writ, and recommend that the petition be DISMISSED.

## Factual Background

In July 2006, Vincent hired a fourteen-year-old girl to help him clean his house. At trial, the girl testified that on the fourth day of the job, Vincent offered to pay her for

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Department of Corrections Commissioner Andrew Pallito is automatically substituted for the former Commissioner as the respondent in this case.

sex and to show her nude photographs on his cell phone. That same day, while the girl was cleaning the bathroom, Vincent allegedly entered the room, grabbed her waist with both hands, bent her over, and pressed himself against her buttocks. The girl further testified that later that day, Vincent sat opposite her in his living room and exposed himself. Finally, while driving the girl home, Vincent allegedly expressed his desire to have oral sex with her. *State v. Vincent*, 2008 WL 4539504, at *1 (Vt. Oct. Term 2008); (Doc. 3-8 at 27-34).

Trial witnesses testified that after returning from Vincent's home that day, the girl was upset and nervous. She spoke to her mother, who in turn notified the police. The police met with the girl that evening. *Vincent*, 2008 WL 4539504, at * 1; (Doc. 3-8 at 68-69).

The investigating officer testified at trial. His testimony included information about his training, and specifically his experience in dealing with child victims and suspects. When the State asked him if there were any "general principles" he followed when interviewing a suspect, the officer responded:

> Yeah, generally, you know, when you interview you kind of use your own style and you take little pieces from training that you've learned and implement them. The training teaches you how to detect deception, as well as truthfulness, the different verbal and nonverbal clues, you know, that you can pick up on when someone is being deceptive or being truthful.

(Doc. 3-8 at 75, Doc. 3-9 at 1).

The officer did not testify directly about Vincent's credibility. He did testify that

2

during his interview with Vincent, Vincent told him that the girl had initiated the sexually inappropriate conversations, and that he had not offered her money for sex. Vincent also reportedly acknowledged being in the bathroom, but said that the room was small and that any rubbing was inadvertent. (Doc. 3-9 at 8-13). Vincent did not testify at trial.

After hearing testimony from the girl, her cousin, the girl's mother, and the investigating officer, the jury found Vincent guilty of lewd and lascivious conduct with a child. The trial court found that Vincent had been convicted of a prior lewd and lascivious conduct offense, and sentenced him to five years to life in prison. Vincent appealed his conviction.

On appeal, Vincent raised the same two arguments he raises in his § 2254 petition. First, he claimed that "the officer's testimony quoted above was an impermissible comment on defendant's lack of credibility." *Vincent*, 2008 WL 4539504, at *2. The Vermont Supreme Court rejected this argument, concluding that "[t]he officer here was not offered or qualified as an expert witness, and he made virtually no statement attesting directly or indirectly to his views on whether defendant was telling the truth." *Id.*

Vincent's second argument was that "the trial court erred in failing to give a limiting instruction to the jury on the use of evidence of other bad acts." *Id.* This argument was rejected as well, as the court found that "[a]ll of the conduct in question was closely linked in time and circumstances to the charged offense, forming an almost uninterrupted effort by defendant to induce the complainant to discuss and eventually

3

engage in sex. As such it was part of the res gestae surrounding the crime" and did not require a limiting instruction. *Id.*

Vincent timely filed his § 2254 petition on January 13, 2009. The respondent has moved to dismiss, arguing that Vincent's claims are unexhausted because he failed to alert the Vermont Supreme Court to the constitutional nature of his arguments, and that the petition lacks legal merit. Vincent has not responded to the motion to dismiss.

## Discussion

I. **Admission Of Officer's Testimony**

   A. **Exhaustion**

The Court will first address the respondent's exhaustion argument. State prisoners seeking federal habeas review must exhaust their state remedies before coming into federal court. *See* 28 U.S.C. § 2254(b) and (c); *see also Daye v. Attorney Gen.*, 696 F.2d 186, 190 (2d Cir. 1982) (en banc). The exhaustion requirement "springs primarily from considerations of comity" between the federal and state courts. *Daye*, 696 F.2d at 191. To meet this exhaustion requirement, a petitioner must have "fairly presented" the state courts with "the same claim he urges upon the federal courts," as a way of giving the state court "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal citations omitted); *see also Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003).

In order to have "fairly presented" a federal claim, a petitioner must have "set

forth in state court all of the essential factual allegations asserted in his federal petition," and "placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Daye*, 696 F.2d at 191-92. Courts have generally held that a federal claim may be "fairly present[ed] to the state courts . . . without citing chapter and verse of the Constitution" in several ways, including: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis [in factually similar circumstances], (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 194; *accord, Jones v. Vacco*, 126 F.3d 408, 413-14 (2d Cir. 1997); *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994).

In this case, Vincent argued that the lower court erred when it allowed the investigating officer to testify about his ability to detect truthfulness. This testimony, Vincent claimed, interfered with the jury's role as fact-finder. Vincent's brief referenced *State v. Wetherbee*, 156 Vt. 425 (1991), in which the Vermont Supreme Court analyzed the role of expert testimony and its potential impact upon "the core function of the jury, . . . [and] the defendant's constitutional right to trial by jury." *Wetherbee*, 156 Vt. at 431. Citing *Wetherbee* for support, Vincent argued that when the prosecution presents expert testimony on a credibility question, "the defendant's constitutional right to trial by jury is

5

infringed." (Doc. 3-6 at 11). By relying upon a state case that acknowledged the presence of a constitutional issue, Vincent arguably fulfilled the second method set forth in Daye for exhausting habeas claims. *See Curtis v. Fischer*, 387 F. Supp. 2d 218, 225 (W.D.N.Y. 2005) (citing *Daye*, 696 F.2d at 194).

Vincent's reference to his right to a jury trial also presented to the state court a well-known, although broad, constitutional right. In *Daye*, the Second Circuit noted assertion of a broad constitutional right, such as the right to a fair trial, will generally require further inquiry. To that end, *Daye* held that district courts should examine whether the "claim rests on a factual matrix that is well within the mainstream of due process adjudication." *Id.* (citation and internal quotation omitted).

In *Snowden v. Singletary*, 135 F.3d 732, 739 (11th Cir. 1998), the Eleventh Circuit held that "allowing expert testimony to boost the credibility of the main witness . . . violated [the defendant's] right to due process by making his criminal trial fundamentally unfair." Similarly, the Eighth Circuit in *Bachman v. Leapley*, 953 F.2d 440, 441 (8th Cir. 1992) stated that when expert testimony "as to the credibility of the victims' statements" is admitted, the court is compelled to "decide whether the wrong is of a constitutional dimension." Within the Second Circuit, it has been noted that expert testimony about a witness's credibility involves not only questions of prejudice, but also a defendant's constitutional rights. *United States v. Sessa*, 806 F. Supp. 1063, 1069 (E.D.N.Y. 1992).

Accordingly, this Court should find that Vincent's argument to the Vermont

6

Supreme Court alerted that court to an issue that is "within the mainstream of due process adjudication." *Daye*, 696 F.2d at 193. The Court may therefore proceed to a review of the Vermont Supreme Court's determination that admission of this testimony did not "strike[] at the very heart of defendant's constitutional rights." *Vincent*, 2008 WL 4539504, at *2.

### B. The Merits

In reviewing the Vermont Supreme Court's decision, this Court must apply the standard of review set forth in 28 U.S.C. § 2254, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"Clearly established Federal law" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion

7

opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

The § 2254 standard of review is deferential to the reasoning provided in state court decisions. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Also, state court factual determinations receive a presumption of correctness if they are "fairly supported by the record." *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994).

Here, the investigating officer testified that his training taught him "how to detect deception, as well as truthfulness." Vincent argued on direct appeal that this testimony meant the officer was presented to the jury as a "truth-detector." (Doc. 3-6 at 11). Vincent further argued that "[w]hile the officer did not express explicitly an opinion as to the Defendant's lack of credibility, the fact that the prosecution went forward after the

officer's investigation made his opinion unmistakable to the jury." *Id.* at 12.

The Vermont Supreme Court reviewed the issue under the general principle that "[j]udging the credibility of witnesses is the sole province of the jury." *Vincent*, 2008 WL 4539504, at *2. Citing its own precedents, the court concluded that the officer's statements "were not remotely similar to those that have been held to be error." *Id.* (citations omitted). Specifically, the court found that Vincent's argument that "the officer impliedly disbelieved defendant because" the prosecution went forward with its case "is far too tenuous to support a claim of error . . . much less plain error that strikes at the very heart of defendant's constitutional rights." *Id.*

As the Vermont Supreme Court properly noted, the officer in question was never qualified as an expert and made no direct statement about Vincent's credibility. Nonetheless, Vincent asked the state court, and now this Court, to assume that the officer's comments about detecting truthfulness during an interview were somehow "expert," and that they invaded the jury's role in determining credibility. His argument is particularly strained given that he did not testify at trial.

The Court has not found, and Vincent has not presented, any Supreme Court case law directly on point. While the "expert" in this case gave testimony that allegedly pertained to a suspect's credibility, the more common scenario is presumably an expert testifying about the *victim's* credibility (since defendants themselves often do not testify in their criminal trials). Even there, the Supreme Court has not addressed whether due

process rights are violated by such testimony. *See Pug v. Minnesota*, 2008 WL 5284344, at *8 (D. Minn. Dec. 18, 2008) ("The United States Supreme Court has not spoken on the issue whether the admission of expert testimony that the victim has been sexually abused denies a petitioner of due process."). Accordingly, Vincent has failed to show that the Vermont Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Nor did the state court unreasonably determine the facts in light of the evidence presented. Indeed, the issue before the Court is primarily legal in nature, with the sole dispute being the constitutionality of allowing the officer's testimony.

Finally, if the Court views the state court's ruling as an evidentiary matter, federal habeas relief is only available for state evidentiary errors where "the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). In order to satisfy this standard, the evidence must be "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed in the record without it." *Id.*

Here, the jury heard testimony from several witnesses, including the complainant herself. In light of this substantial testimony, the officer's statements about his interview practices cannot be said to have provided the basis for conviction or to have removed any

reasonable doubt. Vincent's first argument for habeas corpus relief, based upon the officer's so-called "'expert' opinion evidence," should therefore be DENIED.

## II. Lack Of Instruction Re: "Other Bad Acts"

### A. Exhaustion

Vincent's next argument is that the trial court failed to provide the jury with a limiting instruction on the use of evidence of "other bad acts." Again, the respondent argues that although this claim was raised before the Vermont Supreme Court, it is unexhausted because it failed to alert the court to a federal constitutional claim.

The acts in question "occurred just before and after the charged offense that occurred in the bathroom, including a solicitation of sexual acts, sexually inappropriate conversation, exposure of his penis, and reference to an allegedly nude photograph on his cell phone." *Vincent*, 2008 WL 4539504, at *2. Vincent argued on appeal that allowing such evidence to reach the jury raised "the grave risk the evidence was put to an improper use, thereby denying [the] defendant a fair trial." (Doc. 3-6 at 14).

This single reference to his right to a "fair trial" is the closest Vincent came to presenting any form of constitutional claim in state court. In his brief on appeal he distinguished three state court cases, none of which discussed limiting instructions in the context of constitutional rights. (Doc. 3-6 at 14-16) (citing *State v. Holcomb*, 156 Vt. 251, 255-56 (1991); *State v. Johnson*, 158 Vt. 508, 521 (1992); *State v. Hendrick*, 173 Vt. 132, 140-41 (2001)). In fact, both Vincent's brief and his cited cases framed the issue as

one of evidentiary propriety, specifically under Vermont Rule of Evidence 404(b). (Doc. 3-6 at 14); *e.g. Hendrick*, 173 Vt. at 140.

Vincent's best argument for exhaustion is that his claim with respect to the lack of a limiting instruction was "within the mainstream of due process adjudication." *Daye*, 696 F.2d at 193. In *Dunnigan v. Keane*, 137 F.3d 117, 127 (2d Cir. 1998), the Second Circuit stated that "[i]n some circumstances, we could envision that a refusal to give such an instruction would constitute an error so egregious as to amount to a denial of due process." Nonetheless, courts in this circuit have consistently held that "[t]he mere incantation of the words 'fair trial' and 'due process of law' before the state courts does not alert them to the federal nature of the claim." *Anderson v. Reynolds*, 1992 WL 47979, at *4 (S.D.N.Y. March 3, 1992) (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984) (habeas petitioner did not alert state courts to double jeopardy claim by contending that introduction of certain evidence "deprived him of [a] fair trial and due process of law")); *de la Cruz v. Kelly*, 684 F. Supp. 884, 886-88 (S.D.N.Y 1986) ("talismanic invocations of broad guarantees, such as those to 'due process' or to a 'fair trial,' will not obviate the exhaustion requirement").

Unlike his argument with regard to the officer's opinion testimony, Vincent's "other bad acts" claim made no direct reference to a constitutional right. As a consequence, the Vermont Supreme Court's ruling on that issue is similarly devoid of any reference to a constitutional question. The cases cited by Vincent did not employ

any sort of constitutional reference or analysis, and as a result, his only indication of a constitutional claim at the state court level was his passing mention of a right to a "fair trial." This vague reference to a potential due process violation did not "fairly present" a federal constitutional question to the Vermont Supreme Court, and this claim should therefore be deemed unexhausted.

In some circumstances, federal courts have discretion to review and deny on the merits any unexhausted claims that are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *Wheeler v. Phillips*, 2006 WL 2357973 at *5 (E.D.N.Y. Aug. 15, 2006); 28 U.S.C. § 2254(b)(2). Unexhausted claims may be reviewed on the merits only if the habeas court is going to deny the entire petition. 28 U.S.C. § 2254(b)(2). For reasons set forth below, Vincent's "other bad acts" claim plainly lacks legal merit. I therefore recommend that the Court proceed to merits of that claim and dismiss his entire petition.

**B.     The Merits**

Because Vincent did not present a federal constitutional claim in state court, the Vermont Supreme Court ruled on the "other bad acts" using purely state court precedents. *Vincent*, 2008 WL 4539504, at *2 (citing *State v. Maduro*, 174 Vt. 302, 206 (2002); *State v. Norton*, 147 Vt. 223, 235 (1986)). The court held that no limiting instruction was necessary, since all of the acts in question were "closely linked in time

13

and circumstances to the charged offense, forming an almost uninterrupted effort by defendant to induce the complainant to discuss and eventually engage in sex." Even if this Court were to find error in the state's court's ruling, it could only find a due process violation if (assuming proper exhaustion) the petitioner has demonstrated a resulting "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004). Vincent has made no such showing.

Vincent claims that by failing to provide a limiting instruction, the trial court allowed the "other bad acts" evidence to be used to "prove the character of a person in order to show that he acted in conformity therewith" in violation of Vermont Rule of Evidence 404(b). In his § 2254 memorandum, he speculates that allowing this evidence to reach the jury raised "the grave risk the evidence was put to improper uses." (Doc. 1-3 at 10). As the Vermont Supreme Court properly found, however, the evidence at issue related directly to events surrounding the crime. Indeed, the acts in question were not distant crimes that might be used to show the defendants' general character, but were instead part of Vincent's "uninterrupted effort to . . . engage in sex" with the complainant. *Vincent*, 2008 WL 4539504, at *2. Thus, any claim that this evidence might have been put to "improper uses" is misplaced. *See United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) ("evidence of uncharged criminal activity is not considered

14

'other crimes' evidence under Fed. R. Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'") (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)).

Moreover, if the Court were to find a constitutional violation, the scope of its review would be limited to the "contrary to" or "unreasonable application of" Supreme Court precedent standard set forth in § 2254. *See Williams*, 529 U.S. at 412-13. The Supreme Court has yet to establish clearly "when the admission of prior crimes under state evidentiary laws can constitute a federal due process violation." *Flowers v. Ercole*, 2009 WL 2986738, at *12 (S.D.N.Y. Sept. 18, 2009); *see Alloway*, 301 F. Supp. 2d at 300 (citing *Estelle*, 502 U.S. at 67-68). Consequently, Vincent cannot meet the § 2254 standard.

Finally, there is no dispute about the Vermont Supreme Court's application of the facts in light of the evidence presented. I therefore recommend that the Court deny Vincent's second argument for habeas corpus relief, and that his entire petition be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that the respondent's motion to dismiss (Doc. 3) be GRANTED, that Vincent's petition for writ of habeas corpus (Doc. 1) be DENIED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 28th day of September, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).